JUDGE PETERS
delivered the opinion op the court.
This action was brought by appellee against appellants for a malicious prosecution; and a judgment having been rendered against them for one thousand dollars, in accordance with tbe verdict of the jury, and Ullman having declined to accept a new trial on the payment of costs, as tendered by the court *740 below, and the motion of Bamberger having been overruled, they have appealed to this court. ■
Appellee alleges in her petition that at the November term, 1871, of the Jefferson Circuit Court, appellants falsely, maliciously, and without reasonable or probable cause, procured an indictment to be found against her by the grand jury for said county for the alleged crime of receiving stolen property, knowing the same to have been stolen; that said appellants swore and testified to the charge in said indictment contained falsely, maliciously, and without any reasonable or probable cause whatever; and upon the return of said indictment against her into court, indorsed a true bill, she was immediately arrested by the order of said court, and held in custody until she entered into recognizance, with good sureties, in a large sum to appear in court at the appointed time to answer said indictment; that she appeared in court on the 20th of January, 1872, as required by said recognizance, to answer to said indictment, and continued to appear in court' for that purpose until the 27th of January, 1872, when she was tried for said alleged crime, and after a full and fair trial the jury returned a verdict of not guilty; whereupon said prosecution was ended, and she was discharged by order of court.
She then states in detail the sums she was compelled to expend and the grievances she suffered by reason of said prosecution, and concludes with a prayer for twenty thousand dollars in damages.
On the trial Field and Rodworth were introduced as witnesses, and proved that they were members of the grand jury that found the indictment, and that it was found on the information of appellant Ullman, who was also a member of the grand jury; that he stated to them that the goods found in appellee’s possession had been stolen from a firm of merchants, he being a partner in said firm; and that appellee received them knowing that they had been stolen. And that he stated *741 to the jury who tried her that he and his partners had been missing goods from their store, and had suspected one of their employees of taking them; that appellant “Bamberger told him about discovering the larceny of the piece of calico, the catching the boys, and finding the calico in possession of Mrs. Abrams, and that she admitted she bought it of Nathan Goldsmith for $2.75, and he felt satisfied she must have known it was stolen because she bought so cheap.”
Appellee then proved that appellants had each separately and at different times called at her house and used very abusive and offensive language to her, calling her a thief and swindler, and threatened to have her prosecuted and sent to the penitentiary if it cost them large sums of money. To this evidence appellants objected in the court below; but their objections were overruled and the evidence admitted, which they complain of as an error for which the judgment should be reversed. We think the evidence competent to show the existence of malice on the part of appellants.
After the evidence was closed, it is stated in the bill of exceptions that “the defendant” (without designating which one of them) “ moved the court to give the following instructions” (all of which, being five in number, are copied immediately after said statement, and are marked by the judge refused); after which the following statement is contained in the bill of exceptions: “And the plaintiff moved the court for the following instructions.” There are three of them, which are also copied and marked refused by the judge, and then follows this statement: “And the court refused to grant instructions asked for the plaintiff, to which plaintiff excepted at the time; and refused to grant the instructions asked for the defendant, except those asked for by defendant Ullman, which are marked granted, and are as follows.” Then follow two instructions, one marked “granted” and the other “refused” on the margin of the page, with the name of the *742 judge under both the words “granted” and “refused;” and then follows this information for those whose duty it may be to read the record: “ And then the separate instruction asked for defendant Bamberger, to which action of the court the defendants both and each excepted at the time, and still except, and the coui’t gave instructions as follows ” — which are five in number, and appear to have been given in lieu of those asked for by appellee and appellant Bamberger, to the giving of which appellants both excepted.
The only intelligent and consistent interpretation that can be given to the proceedings, as presented by the bill of exceptions, is that to the instructions given by the court in place of those asked by Bamberger and by appellee, appellants both excepted.
An instruction given on motion of appellant Ullman is in these woi’ds: “If the jury believe from the evidence that the defendant, S. Ullman, caused or procured the indictment of plaintiff while serving as a grand juror, and not otherwise, the law is for said defendant Ullman, and so should their verdict be.” This instruction was fully authorized by section 111 of the Criminal Code, which provides that a grand juror can not be questioned for any thing he may say or any vote he may give relative to a matter legally before the grand jury, except for perjury he may have committed in making an accusation or giving testimony befox’e his fellow-jurors. This section of the Criminal Code is but a repetition of the existing law as recognized aixd expounded by this court many year’s before the adoption of the Code.
In Black v. Sugg (Har. 556) it is said, “From time immemorial grand juries have been held as component parts of the courts of criminal jurisdiction, as representing the whole community, as forming a barrier against licentiousness in the citizen, and unjust vexation by the government without probable cause. The important services required at their hands *743 are well explained in the oath administered. The free discharge of these duties, unintimidated by the trouble consequent upon being put to show the motives and probable cause by which the individual jurors were actuated, is of higher concern to the community at large than an individual inconvenience which may now and then grow out of this branch of our jurisprudence.” And therefore adjudged that the action was not maintainable against a grand juror.
But the court below gave another instruction as follows: “ That this is an action for malicious prosecution, and if they believe from the evidence, first, that the prosecution complained of was procured or instigated by the defendants, or either of them, without any reasonable or probable cause, and second, that it was done maliciously, the law is for the plaintiff, and so the jury should find as to such of the defendants as they may believe thus guilty.” If this instruction had been limited to the defendant Bamberger, it would not have been erroneous, but in making it apply to Ullman it took from him the protection the law threw around him while acting as grand juror, and placed him in the same condition of his co-defendant who was not thus shielded.
The following instruction was also given by the court: “If the jury believe from the evidence that there was no reasonable or probable cause for the prosecution, the law implies malice against those who have been guilty of procuring or instigating the same, and proof of actual malice is not necessary.”
In Garrard v. Willet (4 J. J. Marshall, 628) this court held that on general principles in an action for a malicious prosecution the plaintiff must prove that the prosecution was malicious. Malice is the gravamen; it may be express or implied. From the absence of probable cause for the prosecution malice will be inferred.
But as the plaintiff must prove malice, proof of want of *744 probable cause devolves on him. The acquittal of the plaintiff by the venire is evidence of his innocence, but does not prove the malice of the prosecutor. The defendant will not be required to prove any thing until the plaintiff shall have given some evidence of malice independent of any inference from the verdict of acquittal.
It is necessary to aver malice in an action for a malicious prosecution, and it must be proved. As malice will not necessarily result from an averment of acquittal by the, venire, it can not be inferred on the trial from the proof of such acquittal alone.
This instruction is in conflict with the authority cited, and is prejudicial to appellant Bamberger as well as to Ullman.
The court below did offer Ullman a new trial upon the payment of costs. If the court erred to his prejudice in giving instructions, he had the legal right to have that error corrected; and as it was without fault on his part, he should not be burdened with the cost of correcting the error. The new trial should have been granted him, leaving the question of costs to abide the final result of the action.
"Wherefore the judgment must be reversed for the reasons herein stated, no other errors being perceived, and the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.